IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | : : : | |
| Plaintiff, | : : | CIVIL ACTION NO. |
| v. | : : | JURY TRIAL DEMAND |
| KAISER FOUNDATION HEALTH PLAN OF GEORGIA, INC., | : : : | |
| Defendant. | : : | |

## **COMPLAINT**

This is an action under Title I of the Americans with Disabilities Act of 1990, as amended ("ADA"), and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices based on a disability. The purpose of this action is to provide appropriate relief to Sharion Murphy ("Murphy"). The Equal Employment Opportunity Commission ("EEOC") alleges that Kaiser Foundation Health Plan of Georgia, Inc., ("Defendant") engaged in intentional discrimination against Murphy when it failed to accommodate her disabilities, in violation of the ADA.

1

# JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3), of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. 2000e-5(f)(1) and (3) ("Title VII"), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Georgia, Atlanta Division.

# PARTIES

3. The EEOC is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant has continuously been a corporation doing business in the state of Georgia and the city of Duluth, and has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporate by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. § 2000e(g) and (h).

6. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

7. More than thirty days prior to the institution of this lawsuit, Murphy filed a Charge of Discrimination with the EEOC alleging a violation of the ADA by Defendant.

8. On September 11, 2018, the EEOC issued to Defendant a Letter of Determination on Murphy's Charge of Discrimination finding reasonable cause to believe that the ADA was violated and inviting Defendant to join with the EEOC in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9. On October 30, 2018, Defendant advised the EEOC that it did "not wish to continue conciliation efforts."

10. On November 1, 2018, the EEOC issued to Defendant a Notice of Failure of Conciliation advising Defendant that the EEOC was unable to secure from Defendant a conciliation agreement acceptable to the EEOC.

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

12. Since on or about January 2017, Defendant has engaged in unlawful employment practices in violation of Section 102 of Title I of the ADA, 42 U.S.C. § 12112.

13. Murphy is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8). Murphy has mental impairments, post-traumatic stress disorder and claustrophobia, both of which substantially limit her in the operation of major bodily functions, including the functions of the brain and neurological system. Murphy's mental impairments also substantially limit her in the major life activities that include, but are not limited to, concentrating, thinking, and communicating.

14. Murphy worked at a building owned and operated by Defendant in Duluth, Georgia. Murphy requested a reasonable accommodation of using a non-revolving door to enter the workplace. Defendant knew of Murphy's disabilities at

the time she requested the accommodation, but Defendant failed to provide the requested accommodation or any alternative accommodation for Murphy's disabilities.

15. Murphy began her employment with Defendant in or around October 2003. During the time period relevant to the claim in this Complaint, Murphy was employed as a Specialty Appointment Coordinator.

16. Murphy was qualified for her job as Specialty Appointment Coordinator and could perform the essential functions of that job with or without a reasonable accommodation.

17. In January 2017, Murphy sought a reasonable accommodation of being allowed to enter the building where she was employed by Defendant (the "Building") through a non-revolving door instead of through a revolving door.

18. The Building can be entered through both revolving doors and non-revolving doors.

19. In early January 2017, Defendant's National Facilities Services Project Coordinator told Murphy that she was required to use the revolving doors to enter the Building.

20. Murphy told the Project Coordinator that she had medical conditions that prevented her from using a revolving door, so Murphy was told that she would need to provide a doctor's note.

21. Murphy provided Defendant with a doctor's note dated January 18, 2017, in which her physician, a physician also employed by Defendant, states, "[Murphy] has claustrophobia and should be allowed to use the regular doors. She cannot use the revolving door (sic) to her claustrophobia."

22. Defendant denied Murphy's accommodation request and Murphy was forced to use the revolving doors to enter the Building.

23. Each time that Murphy was forced to use the revolving doors, she was subjected to trauma because of her disabilities.

24. Not only did Defendant not grant Murphy's requested accommodation, Defendant had the non-revolving doors locked and marked "Emergency Exit Only." Despite this, Murphy continued to enter the Building through a non-revolving door by having a security guard open it for her.

25. On March 7, 2017, Murphy tried to access the Building through a non-revolving door only to be told by the security guard that he could not let her in because he would be written up. A co-worker eventually let Murphy into the Building.

26. Because of the incident on March 7, 2017, Murphy went to her supervisor and the Operations Supervisor about not being allowed to use the non-revolving door. For the first time, Murphy was informed that she needed to complete a Job Accommodation Request Form. Murphy did not go out for lunch that day for fear of not being let back into the Building.

27. On March 17, 2017, Murphy completed the Job Accommodation Request Form listing her limitation as "I am Claustrophobic and cannot use revolving doors." The accommodation Murphy requested was "[t]o use the regular doors."

28. Defendant continued to deny Murphy the requested accommodation of using a non-revolving door and she was forced to go on short-term disability leave.

29. On May 4, 2017, another Kaiser physician signed a Verification of Treatment form, stating that Murphy could return to work on Tuesday, May 9, 2017, with the following restrictions: "Ms. Murphy may access and leave the workplace building through a non-revolving door." The form also included the diagnosis code F34.10 Post Traumatic Stress Disorder.

30. On her first day back to work, Murphy asked one of the security guards where the old security guard was. He told Murphy that the old security guard had been transferred because he had let Murphy use the non-revolving doors.

31. On May 20, 2017, Murphy submitted another Job Accommodation Request again stating, "I am Claustrophobic and cannot use revolving doors." Murphy again requested "[t]o use the regular doors" as an accommodation.

32. Even after submitting yet another Job Accommodation Request, Defendant still refused to accommodate Murphy by letting her use a non-revolving door for entering and exiting the Building.

33. While on short-term disability leave, Murphy was prescribed medication that would allow her to use the revolving door. Murphy, however, could not drive while taking the medication. As a result, she had to arrive more than an hour before her start time, take the medication, let it take effect, and then gird herself to get through the revolving door.

34. At the end of her work day, because she could not drive after taking the medication, she either had to take her medication to get through the revolving door and then sit in the parking lot waiting for the medication to wear off so she could drive home, or not take the medication and force herself to go through the revolving door.

35. On May 30, 2017, Murphy sent a letter to the EEOC describing what was happening to her and stating that she was still being denied the use of non-revolving doors. Yet, during this entire time, members of management, the IT team,

and other non-employees were entering the Building through a non-revolving door in another part of the Building.

36. On June 15, 2017, Murphy filed a Charge of Discrimination with the EEOC alleging that she had been subjected to discrimination under the ADA.

37. On or about July 24, 2017, over six months after her first doctor's note was provided to Defendant, Defendant agreed to accommodate Murphy by allowing her to use the non-revolving doors to enter the Building.

38. The effect of the practices complained of above have been to deprive Murphy of equal employment opportunities and otherwise adversely affect her status as an employee because of her disabilities.

39. The unlawful employment practices complained of above were intentional.

40. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally-protected rights of Murphy.

**PRAYER FOR RELIEF**

WHEREFORE, the EEOC respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns and all other persons in active concert or participation with them,

from denying reasonable accommodations to employees with disabilities, and any other employment practices that discriminate on the basis of disability status.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for disabled employees, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make Murphy whole by providing appropriate back pay with pre-judgment interest, in an amount to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D. Order Defendant to make Murphy whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in an amount to be determined at trial.

E. Order Defendant to make Murphy whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described above, including emotional pain and suffering, loss of enjoyment of life, inconvenience, anxiety, stress, and humiliation, in amounts to be determined at trial.

F. Order Defendant to pay punitive damages to Murphy for Defendant's malicious and/or reckless conduct described above, in an amount to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the EEOC its costs in this action.

## JURY TRIAL DEMAND

The EEOC requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

SHARON FAST GUSTAFSON
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

ANTONETTE SEWELL
Regional Attorney

LAKISHA DUCKETT-ZIMBABWE
Supervisory Trial Attorney

s/ Steven A. Wagner
Steven A. Wagner
Trial Attorney

Georgia Bar No. 000529
steven.wagner@eeoc.gov

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, Georgia 30303
(404) 562-6897 (direct)
(404) 562-6905 (facsimile)